IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS D. SEIDEL | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 6164 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| KANE COUNTY SHERIFF, PATRICK PEREZ, SERGEANT CONKLIN, SERGEANT PLEITT, CORRECTIONAL OFFICER BOMMELMANN, REGINA GROVES, and KUL SOOD, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nicholas D. Seidel, who at the time was an inmate at Kane County Correctional Center, brought this action under 42 U.S.C. § 1983, alleging the defendants were deliberately indifferent to his serious medical needs. The Court previously has dismissed Defendants Kane County Adult Justice Center, Sergeant Conklin, Richard Pleitt, Christian Bommelman, Patrick Perez, and Chris Ducay. The two remaining defendants, Regina Groves and Kul Sood, filed a motion for summary judgment. For the following reasons, the Court grants Defendants Groves and Sood's motion for summary judgment [105].

**Factual Background**

On October 17, 2012, Seidel was running in the recreation room at Kane County Correctional Center when he fell and hit his head, back, and right knee. *See* Defs.' LR 56.1 Stmt. ¶ 9, ECF No. 107. Soon after, an EMT determined that he had no deformity, swelling, or redness and told Seidel to contact the medical unit if anything changed. *See id.* ¶ 13; *see also* Defs.' LR 56.1 Stmt., Ex. D at 56 ("Medical Records"). The next day, Seidel complained of pain in his leg, and he was put on a list to see a doctor on October 19th. *See* Medical Records at 56. Dr. Sood

provided a phone order for a five-day prescription of Motrin, an over-the-counter pain reliever. *See* Defs.' LR 56.1 Stmt. ¶ 16.

The parties dispute the events on October 19th. Groves, a nurse at Kane County Correctional Center, alleges that Seidel declined to take his medication during her initial round. *See id.* ¶ 17. According to Groves, Seidel eventually took his medication, but he yelled and complained that he had not yet been able to see a doctor. *See id.* ¶¶ 17, 20. Seidel, on the other hand, alleges that he never refused to take any medication. *See* Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 17, ECF No. 115. According to him, Nurse Groves refused to bring him his medicine, and he was forced to use a plastic chair to get to the cart from which Groves was handing out the medication. *See id.* ¶ 20. Seidel claims that, while he took the Motrin, Nurse Groves told an officer standing nearby that Seidel had been refusing his medication. *See* Defs.' LR 56.1 Stmt. ¶ 19. Seidel was surprised to hear Nurse Groves say that and asked whether she was looking at the wrong medical file. Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 20. Then, according to Seidel, Nurse Groves slammed shut the book with medical records and walked away. *See* Seidel Dep. at 71:11–73:19, Defs.' LR 56.1 Stmt., Ex. A.

After his interaction with Nurse Groves, Seidel was seen by Dr. Sood. During the appointment, Dr. Sood examined Seidel's right knee and made various notes about his general condition. *See* Defs.' LR 56.1 Stmt. ¶ 23.[1] Seidel testified at his deposition that Dr. Sood appeared to be annoyed with him and never made eye contact. Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 23. Dr. Sood's notes indicate that he ruled out a contusional injury to Seidel's leg and ordered

---

[1] There is some confusion in the record about which leg was treated. When Seidel fell, he hurt his right knee. Defs.' LR 56.1 Stmt. ¶ 11. The EMT's notes also reflect that he was complaining of pain in his right knee. Medical Records at 56. From that point forward, however, the medical progress notes from nurses and Dr. Sood reference only his left knee. *See, e.g.*, *id.* at 51, 54, 56. Despite Dr. Sood's notes indicating that he checked Seidel's left knee, Seidel himself says the doctor checked the range of motion of his right knee. *See* Seidel Dep. at 118:18–119:13.

an Ace bandage for his knee and a seven-day prescription of Naprosyn, an anti-inflammatory drug. *See* Defs.' LR 56.1 Stmt. ¶ 25. Seidel acknowledges that Dr. Sood told him he was ordering the bandage for his knee, but says he never received it. *See* Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 23; Seidel Dep. at 87:15–19.

A few days after his original appointment, Seidel continued to complain about pain in his knee and hip, so Dr. Sood ordered an x-ray. *See* Defs.' LR 56.1 Stmt. ¶ 28. The x-ray report did not show any fracture or dislocation. *See id.* ¶ 31.[2] Seidel was told of the results of the x-ray and instructed to notify the medical staff if the pain persisted. *See* Medical Records at 51.[3]

**Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court gives "the non-moving party the benefit of conflicts in the evidence and reasonable inferences that could be drawn from it." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 794 (7th Cir. 2013). In order to survive summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts[,]" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and instead "must establish some genuine issue for trial such that a reasonable jury could return a

---

[2] As with the other medical notes, the order requesting the x-ray and the report identify his left leg as the relevant one. *See* Defs.' LR 56.1 Stmt. ¶ 28; Medical Records at 87. Seidel himself, however, testified that it was his right leg that was x-rayed. *See* Defs.' LR 56.1 Stmt. ¶ 29; Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 29.

[3] In January 2013, Seidel fainted while in his room, which resulted in a laceration to his lower lip. *See* Defs.' LR 56.1 Stmt. ¶¶ 35, 38. Dr. Sood examined him the next day and sutured his lip. *See id.* ¶ 39. As to the cause of the fall, Dr. Sood's notes show that he determined Seidel had a syncopal attack and ordered daily checks of his blood pressure and levels of sugar in his blood. *See id.* ¶ 39. A few days later, Seidel went back to see Dr. Sood, had his stitches removed, and was told his blood pressure and sugar levels were normal. *See id.* ¶ 43. Seidel does not make any arguments based on this second examination.

verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012). The Court will, however, "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statements." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000).

To state a claim for deliberate indifference, a plaintiff must allege: (1) he was suffering from an objectively serious medical condition, and (2) the defendants were deliberately indifferent to this condition. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). For the second requirement, "[d]eliberate indifference requires more than negligence, rather the defendant must meet essentially a criminal recklessness standard, that is, ignoring a known risk." *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014). While "[e]ven gross negligence is insufficient to impose constitutional liability," a defendant meets the standard of criminal recklessness under deliberate indifference when he ignores a known risk. *McGee v. Adams*, 721 F.3d 474, 481 (7th Cir. 2013).

## Analysis

The first prong of the deliberate indifference claim is not at issue in this case. Defendants' motion for summary judgment focuses on whether Nurse Groves and Dr. Sood were deliberately indifferent to Seidel's condition.

**I.     Nurse Groves**

Seidel's claim against Nurse Groves arises from his interactions with her on October 19, 2012. In particular, Seidel identifies two junctures during which Nurse Groves was allegedly deliberately indifferent to his condition. First, Seidel complains that, when Nurse Groves came in with the medicine cart, she refused to bring him his medication and forced him to walk twenty yards and stand in line even though he was in considerable pain. Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 20. Even viewing the evidence in Seidel's favor, there is no evidence that Seidel told Nurse

Groves that he was in too much pain to walk. Seidel testified in his deposition that the first time he talked to Nurse Groves in relation to his fall was when she came with the medicine cart on October 19th. *See* Seidel Dep. 113:19–114:4. He had told someone else the previous day that he was in pain and asked to have his medicine brought to him, but that person refused his request. *See id.* at 65:23–66:7. But, as Seidel himself testified, that could not have been Nurse Groves. The only statement he made to Nurse Groves on October 19th was a request that she bring him his medicine. *See id.* at 68:20–22. The crucial piece of evidence that is missing from his narrative is evidence that he told Nurse Groves that he was in pain. Without that, there is no evidence from which a fact-finder could determine that Nurse Groves knew about his condition and was deliberately indifferent to it. *See Knight v. Wiseman*, 590 F.3d 458, 464 (7th Cir. 2009) ("[I]n the absence of evidence showing that [the defendants] actually knew of Knight's shoulder injury before Knight reinjured it on February 16, it could not [be] reasonably infer[ed] that the defendants exhibited deliberate indifference to any serious medical condition.").

The second portion of Seidel's claim against Nurse Groves stems from her alleged statement that he had refused his medication in the past. According to Seidel, while he was taking his medication, Nurse Groves made a comment to a nearby correctional officer suggesting that Seidel had been refusing his medication. *See* Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 20. Seidel overheard the comment and, concerned that she was confusing him for another inmate, asked her whether she was looking at the wrong chart. *See* Seidel Dep. at 71:19–73:4. He claims that Nurse Groves looked at the medical records book, slammed it shut, and walked away without saying anything else. *See id.* at 73:4–10. Even taking all of Seidel's statements as true, he has not alleged that Nurse Groves's actions constitute deliberate indifference. At most, she made a false statement about him and walked away in the middle of their conversation. Even if Nurse Groves

5

was looking at another patient's chart when she made the comment, that is not evidence that she was deliberately indifferent to Seidel's pain.

In sum, Seidel has presented no evidence from which a jury could find that Nurse Groves was deliberately indifferent to his medical condition. The Court thus grants the motion for summary judgment as to Nurse Groves.

## II. Dr. Sood

The claims against Dr. Sood are similarly deficient. Seidel fails to pin down any action or inaction on the part of Dr. Sood that amounted to deliberate indifference. Seidel suggests that Dr. Sood was dismissive and rude about his injury during the first examination on October 19th. *See* Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 23. But even if Dr. Sood was rude to Seidel, that alone is insufficient to sustain a claim for deliberate indifference. *See Duckworth v. Ahmad*, 532 F.3d 675, 679–80 (7th Cir. 2008) (rejecting a deliberate indifference claim against a doctor that was based, in part, on the doctor's "questionable bedside manner"). As for the treatment Seidel received, Dr. Sood's notes indicate that he examined the patient's leg, ruled out a contusional injury, and prescribed an anti-inflammatory medication and a bandage for his knee. When the pain did not subside, Dr. Sood ordered an x-ray, which did not show any fractures. It is not enough that Seidel disagrees with the treatment he received; he must present evidence that the care was so blatantly inappropriate as to demonstrate intentional mistreatment. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Instead of presenting any such evidence, Seidel's sole argument is that the doctor performed only a "cursory examination of the plaintiff." *See* Pl.'s Opp'n Defs.' Mot. SJ at 10, ECF No. 114. Seidel's unsupported assertions are insufficient to get past the summary judgment stage.

Seidel argues that the confusion in the medical notes about which leg was being treated is evidence from which a jury could infer that Dr. Sood was deliberately indifferent. *See* Pl.'s

Opp'n Defs.' Mot. SJ at 12. Although a doctor's treatment of the wrong leg could be the basis of a deliberate indifference claim, that is not the case here. Despite the fact that the medical notes referred to his left leg, Seidel himself testified that both Dr. Sood's examination and the x-ray were of his right leg. *See* Seidel Dep. at 118:18–119:13; Defs.' LR 56.1 Stmt. ¶ 29; Pl.'s Resp. Defs.' LR 56.1 Stmt. ¶ 29. In fact, neither his complaint nor his deposition ever mentions this as the basis of his dissatisfaction with Dr. Sood. Given that Seidel's claim has never been based on receiving medical care on the wrong leg, the confusion arising from Dr. Sood's reference to his left leg cannot support Seidel's deliberate indifference claim.[4]

Lastly, Seidel cannot base the deliberate indifference claim against Dr. Sood on the fact that the Ace bandage was never delivered. Accepting as true his claim that he never received the bandage, Seidel fails to put forth any evidence that Dr. Sood knew that a part of his prescribed treatment had not been carried out. Without such evidence, Seidel cannot show that the doctor was indifferent to a serious medical need. *See Knight*, 590 F.3d at 464.

Accordingly, the Court thus grants the motion for summary judgment as to Dr. Sood.

---

[4] Moreover, this is not a situation in which discovery led the prisoner to catch an error in his treatment. Whether Seidel was receiving care on the wrong leg is something that would have been obvious to him at the time he was receiving the treatment.

## **Conclusion**

For the reasons stated herein, the motion for summary judgment [105] is granted. Civil case terminated.

**IT IS SO ORDERED.**                                  **ENTERED   3/16/16**

_____
**John Z. Lee
United States District Judge**